Mary E. FISK, Special Administratrix of the Estate of Clarence J. Fisk, Deceased, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 80–1620.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1981.

Decided Aug. 21, 1981.

Mary L. McElroy, Dept. of Justice, Torts Branch, Washington, D. C., for defendant-appellant.

F. Boyd Hovde, Indianapolis, Ind., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and BONSAL,* Senior District Judge.

PELL, Circuit Judge.

The question presented by this appeal is whether a wrongful death claim brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) (1976), is barred by the two-year statute of limitations set forth at 28 U.S.C. § 2401(b), when more than two years have elapsed since the accrual of a personal injury claim for the wrongful act which caused the death, but less than two years have elapsed since the date of death.

The case arises from a judgment of the United States District Court for the Southern District of Indiana, which awarded the plaintiff-appellee $99,195.58 and costs on a finding by the court that negligent medical treatment by the defendant-appellant (the Government) caused the death of the plaintiff's decedent.

On appeal the Government makes two assignments of error. First, it contends

---

* Judge Dudley B. Bonsal, Senior District Judge of the Southern District of New York, is sitting by designation.

that the trial court erred in fixing the date upon which the plaintiff's wrongful death claim accrued as the date of the decedent's death, rather than as the date upon which the decedent's claim for personal injury accrued.[1] Second, the Government contends that the court erred in finding that the injury which resulted in the decedent's death differed from the injury upon which the decedent's personal injury claim accrued.

### I.

In 1950 the decedent was admitted to a Veteran's Administration hospital for diagnosis of severe headaches. Pursuant to that diagnosis, a Government doctor injected a radiopaque dye in the decedent's carotid arteries. The test was negligently performed, and most of the dye leaked into the soft tissues of the decedent's neck. Twenty-two years later, in 1972, the decedent consulted a physician with complaints of hoarseness. Exploratory surgery revealed dense calcific scarring in the decedent's neck surrounding the laryngeal nerve. Following the operation the surgeon informed the decedent in early 1973 that the scarring was related to the previous injection of dye, but that the decedent need not be concerned about it. Nevertheless, this appears to have been the prodromal stage of the ailment ultimately resulting in the death of plaintiff's decedent. Two years later the decedent sought treatment again, complaining of dizziness and blackouts. His physician at that time diagnosed his problem as artery disease caused by the dye-induced scarring. Surgery revealed that scar tissue was compressing the left carotid artery and impeding the flow of blood to the brain. Another subsequent operation sought to alleviate the problem by a carotid artery bypass. In 1976 the decedent submitted an administrative claim for damages, based on the 1950 malpractice. The claim was denied, and the decedent filed suit in the district court for personal injury. In 1979 the decedent was hospitalized again, and one month later he died from complications of pharyngeal ulceration and esophageal stenosis caused by the dye-induced scarring. Thereafter the decedent's personal injury claim was amended to a cause of action for wrongful death, with the decedent's widow, as special administratrix, as the plaintiff. An administrative claim for wrongful death was filed and denied, and the complaint was re-docketed with a new civil action number. The trial court found that the Government had negligently performed the dye injection, that that negligence caused the death of the decedent, and that the plaintiff was damaged thereby in the above-mentioned amount.

### II.

The Government's primary assignment of error is that the trial court erred by determining that the date of accrual of the plaintiff's claim was the date of the decedent's death. The Government contends that when, as here, the same events or injuries which give rise to a malpractice claim also give rise to a claim for wrongful death, federal law establishes that the date upon which the malpractice claim accrued is also the date upon which the wrongful death claim accrued, and that unless a timely suit for personal injury is filed, any subsequent wrongful death action is barred. The Government thus characterizes the issue as one of conflict between state law, which it concedes, "preserves a cause of action for wrongful death when the preceding personal injury cause of action is barred by the statute of limitations," and federal law, which it contends bars such a cause of action when it is based upon the same acts of negligence which gave rise to a time-barred personal injury claim.

The FTCA was passed in 1946 to remove some of the protections of the doctrine of

---

1. The parties agree that January 1973 was the earliest date upon which the decedent's personal injury claim could have accrued, although the plaintiff contends it did not accrue until later. Because the accrual date of the personal injury claim is not directly in issue in this wrongful death action, we assume, without deciding, that January 1973 was the relevant date for accrual of the decedent's personal injury claim.

sovereign immunity. By its terms it exposes the Government to liability for personal injury or property damage caused by the negligence of any Government employee, "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). The determination of substantive liability is thus governed by whether state law gives rise to a cause of action for the conduct which was the basis of the complaint. *Steele v. United States*, 599 F.2d 823, 825–26 (7th Cir. 1979); *Tyminski v. United States*, 481 F.2d 257, 262 (3d Cir. 1973); *Hungerford v. United States*, 307 F.2d 99, 101 (9th Cir. 1962), *overruled on other grounds, Ramirez v. United States*, 567 F.2d 854 (9th Cir. 1977). To avoid anomalous results as the result of geographic fortuity, however, the federal statute of limitations, set forth at 28 U.S.C. § 2401(b) (1976), controls whether such a claim is time barred. It is well settled that federal law also controls when a claim accrues for statute of limitation purposes, in order to prevent states from avoiding the two-year rule of § 2401(b). *See e. g., Kossick v. United States*, 330 F.2d 933, 935 (2d Cir.), *cert. denied*, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964) ("[I]t would be . . . inimical to allow a state rule postponing 'accrual' far beyond any necessities of the case to subject the United States to the stale claims which the prescription of the short two-year period was intended to avoid."). Thus,

> we look to state law to determine whether the plaintiff's action is premature, but to federal law to determine whether the action is stale. If the plaintiff has a cause of action against the Government under state law, federal law then controls as to whether the plaintiff has timely instituted his suit to recover on that cause of action.

*Quinton v. United States*, 304 F.2d 234, 239–40 (5th Cir. 1962).

■ Indiana's wrongful death statute, Ind.Code § 34–1–1–2 (1971), is based on Lord Campbell's Act, 1846, 9 & 10 Vict., c. 93, which abrogated the common law rule of *Baker v. Bolton*, 1 Camp. 493, 170 Eng. Rep. 1033 (1808), that death could not be complained of as an injury. *In re Estate of Pickens*, 255 Ind. 119, 263 N.E.2d 151, 155 (1970). The purpose of the statute is not to compensate for the injury to the decedent, but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss they have sustained by reason of the death. *Louisville, Evansville, & St. Louis Railroad v. Clarke*, 152 U.S. 230, 236–37, 14 S.Ct. 579, 580, 38 L.Ed. 422 (1894); *Pickens*, 263 N.E.2d at 155; *Wilson v. Jackson Hill Coal & Coke Co.*, 48 Ind.App. 150, 95 N.E. 589, 590 (1911), *cited with approval in N.O. Nelson Mfg. Corp. v. Dickson*, 114 Ind.App. 668, 53 N.E.2d 640, 641 (1944) (in banc). Because the wrongful death claim is designed to compensate for the loss to the survivors caused by the decedent's death, and not the underlying injury, the survivor's claim is independent and not derivative: "the action derives from the tortious act and not from the person of the deceased," *Pickens*, 263 N.E.2d at 156. Thus the statute creates a new and independent cause of action for wrongful death under state law.

■ Turning to the question of when that cause of action accrues, we note that the Government concedes that in an "ordinary" wrongful death action under the FTCA, the federal rule is that the cause of action accrues upon the date of death. *See, e. g., Kington v. United States*, 396 F.2d 9 (6th Cir.), *cert. denied*, 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968) (cause of death discovered 2 months after death: held, statute began to run at date of death); *Young v. United States*, 184 F.2d 587, 588 (D.C.Cir. 1950); *Wolfenbarger v. United States*, 470 F.Supp. 943, 944 (E.D.Tenn.1979); *Pringle v. United States*, 419 F.Supp. 289, 291 (D.S. C.1976); *Foote v. Public Housing Comm'r*, 107 F.Supp. 270, 274–75 (W.D.Mich.1952). *See Pollard v. United States*, 384 F.Supp. 304, 309–10 (M.D.Ala.1974) (cause of action for wrongful death accrues when claimant discovers the existence of the facts upon which the claim is based, and thus the claim can accrue even after the date of death). Nor is it contested that under Indiana law a

claim for wrongful death is not barred despite the lapse of the limitation period governing the decedent's personal injury claim. *Wilson v. Jackson Hill Coal & Coke Co.*, 48 Ind.App. 150, 95 N.E. 589 (1911), *cited with approval in Pickens*, 263 N.E.2d at 155; Note, *Wrongful Death Actions in Indiana*, 34 Ind.L.J. 108, 115–16 & n.47 (1958). *See Louisville, Evansville, & St. Louis Railroad v. Clarke*, 152 U.S. 230, 238, 14 S.Ct. 579, 580, 38 L.Ed.2d 422 (1894) (the plaintiff sued for wrongful death under the Indiana statute; the defendant contended that the action was barred since death occurred more than a year and a day from the injury. Held: "The statute, in express words, gives the personal representative two years within which to sue. He cannot sue until the cause of action accrues, and the cause of action given by the statute . . . cannot accrue until the person injured dies. Until the death of the person injured, the 'new grievance' upon which the action is founded does not exist."). We are persuaded that this general rule is the proper rule applicable to the instant case. As Justice Harlan noted in *Clarke*, until the death of the plaintiff's decedent there can be no claim for wrongful death, because until that event occurs, the damages the statute is intended to remedy have not been inflicted on the plaintiff. To hold that a claim for wrongful death somehow accrues before the date of death would place the class protected by the statute in the legally untenable position of speculating about hypothetical or potential future injuries, for the damages awarded survivors under the wrongful death act, which include funeral and burial expenses, are not identical with those available in a personal injury action to the one actually injured, and remain indeterminate until death has occurred. Clearly no such claim would ever be justiciable even were an astucious plaintiff to lodge such a clairvoyant complaint, for courts simply cannot protect rights against "assumed potential invasions," *Arizona v. California*, 283 U.S. 423, 462, 51 S.Ct. 522, 528, 75 L.Ed. 1154 (1931), until they are presented with an actual case or controversy. *See, e. g., Ashwander v. TVA*, 297 U.S. 288, 324–25, 56 S.Ct. 466, 472–73, 80 L.Ed. 688 (1936).

Furthermore, we note that the question here is not one of choice between conflicting statutes of limitations or accrual dates, but rather one of ascertaining the intent of Congress in enacting the FTCA and its limitations period. *See Young v. United States*, 184 F.2d 587, 589 (D.C.Cir. 1950). It is therefore instructive to find in the legislative history of the amendment which enlarged the FTCA limitations period to two years, that Congress apparently considered the actions for personal injury and for wrongful death as distinct and independent. *See Young*, 184 F.2d at 589 (quoting H.Rep.No.1754, 80th Cong., 2d Sess. (1949)). We therefore hold that when a state statute creates an independent cause of action for wrongful death, it cannot accrue for FTCA purposes until the date of the death which gives rise to the action.

The Government seeks to apply a different rule whenever a wrongful death action is premised upon acts of medical malpractice which would also give rise to a personal injury claim, but that claim has lapsed by operation of the statute of limitations. The Government argues that under the rule of *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a malpractice claim accrues within the meaning of § 2401(b) when an individual knows both of the existence of his injury and the cause of that injury. The Government contends that these two elements were fulfilled in 1973 when a Government doctor informed the decedent that the scarring in his neck was "perhaps related" to the negligent acts of 1950. The Government asserts that it was thereupon exposed to liability for those acts for two years, until 1975, and that any claims based on those acts brought subsequently would be "forever barred" by § 2401(b). The Government argues that the rule applied by the district court would extend the limitations period "to the remainder of an injured party's life, plus two years," and is thus inconsistent with the intent of § 2401(b). This argument, however, confuses the concepts of negligent act and claim. Here the

wrongful acts of 1950 gave rise to two separate claims: a personal injury claim of the decedent, to which the Government was exposed for two years after it accrued, as per the *Kubrick* rule; and a wrongful death claim of the decedent's survivors, to which the Government was exposed for two years after it accrued.

Nor are we persuaded that this result is in conflict with the purposes of statutes of limitations in promoting the reliance and repose interests of litigants and foreclosing claims that have been allowed to languish until evidence has become stale or unavailable.

The cause of death, of course, will still be a matter of proof, and the information cannot be definitely determined prior to the actual occurrence of death. Thus, if the decedent in the present case had been killed by a robber, or by virtue of an automobile accident, or even as a result of some disease not in any way related to the malpractice, the potential wrongful death would have remained just potential, and would have never accrued. Further, the elements of damages cannot be ascertained until the date of death. Evidence on these crucial matters cannot come into existence until death occurs, so there is no more danger of it becoming stale or lost within the two-year period than in other cases. Additionally, we note that any lack of evidence is as equally or more likely to be damning to the plaintiff, who bears the burden of proof on the liability issue, as it is to the Government.

The Government also contends that because some states bar a wrongful death action when a personal injury action based on the same acts of negligence would have lapsed, a contrary rule would defeat the avowed Congressional intent of having a uniform rule govern the limitation of such claims. The Government cites the following cases as examples of the deviation in state law: *Winn v. United States*, 593 F.2d 855 (9th Cir. 1979) (Oregon law); *Milford Memorial Hospital v. Elliott*, 8 Storey 480, 210 A.2d 858 (1965); *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972); *Myers v.*

*City of Plattsburg*, 13 A.D.2d 866, 214 N.Y. S.2d 773 (1961). Of these cases, only *Myers* applies the rule the Government urges. In *Winn*, the state statute was derivative and required that a wrongful death suit be brought within three years of the injury which caused death; the plaintiff had failed to comply and thus her wrongful death suit was barred. The status of the decedent's personal injury suit was irrelevant to the holding. In *Milford*, the Delaware Supreme Court took pains to establish that the question was not one of limitations, but rather that under the Delaware Death Act, "the existence of a cause of action in the plaintiff's [decedent] at the time of her death was a condition precedent to the *existence* of a right of action in the plaintiff under the Death Act. . . ." 210 A.2d at 860–61. Because as we noted above, "we shall look to the law of the state for the purpose of defining the actionable wrong for which liability shall *exist* on the part of the United States, but to the act [FTCA] itself for the limitations [period], . . ." *Maryland ex rel. Burkhardt v. United States*, 165 F.2d 869, 871 (4th Cir. 1947) (emphasis added), this case merely stands for the proposition that a cause of action must exist under state law first to be a viable FTCA claim. In *Gaudette*, the plaintiff's suit was barred because the state limitations period of two years had already expired on the plaintiff's wrongful death claim. However the court noted specifically that the cause had accrued at the date of death, 284 N.E.2d at 225; had the plaintiff brought suit within that two years, despite the lapse of the decedent's personal injury claim, the suit could have gone forward.

Thus *Myers v. City of Plattsburgh*, 13 A.D. 866, 214 N.Y.S.2d 773 (1961), is the only case supporting the Government's assertion of diverse local rules. However, for the reasons discussed above, we are persuaded that the Indiana or majority rule is the better one. Furthermore, we note that the prior practice in federal court has been to apply the less restrictive federal rule whenever a state statute of limitations shorter than the two-year period of § 2401(b) would have barred the action if brought against a private party under state

law. *See, e. g., Kington v. United States,* 396 F.2d 9 (6th Cir.), *cert. denied,* 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968); *Young v. United States,* 184 F.2d 587 (D.C. Cir.1950); *Maryland ex rel. Burkhardt v. United States,* 165 F.2d 869 (4th Cir. 1947). We believe that the rule applied by the district court is the appropriate one, and will promote that uniformity of result that § 2401(b) was designed to protect.

The Government also relies on *Harrison v. United States,* 479 F.Supp. 529 (D.Conn. 1979), *aff'd,* 622 F.2d 573, *cert. denied,* 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980), to establish that even a spouse's independent claim may be barred when it is rooted in injuries to her husband which are barred by an exception to the FTCA. The plaintiff in *Harrison* brought suit for loss of consortium based on service-related injuries to her husband, an Air Force officer. In analyzing her claim, the district court noted that the Government's consent to tort liability was limited by a number of statutory and judicial exceptions, and that the case before it fell within the exception created by *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which held that the Government is not liable under the FTCA for injuries to servicemen that arise out of or are in the course of activity incident to service. The *Harrison* court conceded that the spouse's claim was independent under state law, but applied a series of factors developed in *Feres* and its progeny, and determined that the concerns which militated against allowing servicemen to sue were equally applicable to suits by dependents or survivors of servicemen. None of those factors is applicable to the instant case, and it is clear that a wrongful death claim which does not fall within any of the statutory or judicial exceptions to the FTCA was intended by Congress to fall within the class of suits the Government consented to liability for when it enacted the FTCA.

Finally we note that we need not reach the issue of whether a survivor could recover on a wrongful death theory in a case where the deceased has already prevailed and obtained a satisfied judgment in a personal injury case. The general state rule however seems to be that because the personal injury remedy is designed to make the injured party whole, such double recovery would be barred, and no state law cause of action would exist. *See, e. g., Hecht v. Ohio & Mississippi Railway,* 132 Ind. 507, 32 N.E. 302 (Ind.1892); *Littlewood v. Mayor of New York,* 89 N.Y. 24 (1882).

We conclude therefore that the present action is not barred by the failure to have brought a claim within two years of accrual of the decedent's personal injury claim, but rather that the federal rule in wrongful death actions brought under the Federal Tort Claims Act is that the cause of action cannot accrue until the wrongful death occurs.

The Government also contends that the trial court erred in finding that the injury which resulted in the decedent's death differed from the injury which set the accrual date of the decedent's personal injury claim. However, in light of our holding that the relevant accrual date for the claim sued upon here was the date of death, we need not reach the issue whether this finding is supported by evidence in the record.

Accordingly, for the aforementioned reasons, the judgment of the district court is

Affirmed.